No. 96-3329

United States of America,          *
                                   *
          Appellee,                *
                                   * Appeal from the United States
     v.                            * District Court for the
                                   * Northern District of Iowa.
Ralph A. Weinbender,               *
                                   *
          Appellant.               *

Submitted: January 15, 1997

Filed: April 3, 1997

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit    Judge, and MONTGOMERY,[1] District Judge.

MONTGOMERY, District Judge.

This is an appeal of the district court's[2] denial of a motion to suppress. After the denial of his motion to suppress, Ralph Weinbender entered a conditional plea of guilty to unlawful possession of a silencer in violation of 26 U.S.C. §§ 5861 and 5871. He was subsequently sentenced, *inter alia*, to a term of imprisonment of 24 months. This appeal followed. We affirm.

On June 9, 1993, an unidentified assailant shot a BB gun at the front window of a residence in Dubuque, Iowa. Unbeknownst to the assailant, a video camera had been installed to record activities in front of the house. The videotape on the night of

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Michael J. Melloy, United States District Judge for the Northern District of Iowa.

the shooting showed a man wearing a light-weight windbreaker, dark shorts, tan shoes and a baseball cap with a logo affixed to it.

In October, 1995, the June 9, 1993 videotape was shown to Deborah Weinbender, Ralph Weinbender's estranged wife.  She identified the man on the videotape as her husband by his physical appearance, running style and clothes.  She recognized the bluish-gray windbreaker he had received from his deceased father; the dark shorts which he wore frequently; his tan Reebok shoes and the baseball cap with a logo.

Based on the information obtained from Deborah Weinbender and others, Captain Pat Egan of the Dubuque Police Department applied for a search warrant for Ralph Weinbender's house.  On October 25, 1995, the Iowa District Court, Dubuque County, issued the requested warrant to search for: a bluish-gray windbreaker jacket; a dark pair of shorts, pockets in the front, one in the rear; tannish Reebok shoes; and a ball hat with logo.

Prior to the execution of the warrant, officers were advised by Deborah Weinbender that Ralph Weinbender had several "hiding places" in his house.  She informed the officers that there were hiding places in the attic as well as under the stairs in the basement.  This information was communicated to the officers conducting the search.

Officers from the Dubuque Police Department executed the search warrant on October 25, 1995.  During the search, officers broke into teams to search separate areas of the house.  Officers James Sawvel and Jim Schmit searched the basement, including a closet under the stairs.  The closet was partially finished with drywall hung on several walls.  The seams of the drywall were unfinished.

Upon entering the closet, Officer Schmit observed a framed picture hanging on the unfinished drywall. When he removed the picture, he noticed that the uppermost piece of drywall moved. This piece of drywall was small (approximately 10¼" high by 35" wide) and custom cut to fit in the notch of the steel I-beam which ran along the top of the closet. He then removed the piece of drywall. Although there were nails through it, he was able to remove the drywall in a few seconds without using any tools. Behind the drywall, Officer Schmit saw two pieces of wood stuck between the I-beam and the wall studs. The wood pieces were not attached to anything and were removed.

Using a flashlight, Officer Schmit was able to see items along the I-beam behind the wall studs. The first item extracted was a metal object which Officer Schmit initially believed might be a pipe bomb. He later learned that the item was part of a homemade silencer. Officer Schmit subsequently removed the other items stored along the I-beam. In all, he recovered a pistol, two parts to a homemade silencer, a holster and a magazine for the pistol.

Based upon the evidence seized by Officer Schmit, Ralph Weinbender was charged with unlawful possession of a silencer in violation of 26 U.S.C. §§ 5861(c) and 5871. Weinbender moved to suppress the evidence seized from his basement closet, but his motion was denied. He subsequently pled guilty conditioned upon his right to appeal the district court's denial of his motion to suppress.

In this appeal, Weinbender claims that the police exceeded the authority and scope of the search warrant when the officer removed drywall and two pieces of wood in an attempt to find clothing and shoes from an alleged crime occurring 28 months before the search.

He also claims that the seizure of the items was not justified by the "plain view" doctrine because the officers were not lawfully in a position to view the items and the officers did not realize the incriminating nature of the items at the time they were observed.  He thus argues that the evidence should be suppressed.

The denial of a motion to suppress is reviewed de novo.  See  United States v. Morgan, 91 F.3d 1193, 1195 (8th Cir. 1996); Ornelas v. United States, ___ U.S. ___,___, 116 S.Ct. 1657, 1662,  134 L.Ed.2d 911 (1996).  However, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Ornelas,  ___ U.S. at ___, 116 S.Ct. at 1663, 134 L.Ed.2d 911.  Whether officers exceeded the scope of a warrant during a search is reviewed de novo.  United States v. Becker, 929 F.2d 442, 446 (9th Cir.), cert. denied, 502 U.S. 862, 112 S.Ct. 183, 116 L.Ed.2d 145 (1991), app. after rem. 23 F.3d 1537 (9th Cir. 1994); United States v. Snook, 88 F.3d 605, 607 (8th Cir. 1996).

A lawful search extends to all areas and containers in which the object of the search may be found.  United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.), cert. denied, 502 U.S. 896, 112 S.Ct. 267, 116 L.Ed.2d 220 (1991).  However, "[t]he manner in which a warrant is executed is always subject to judicial review to ensure that is does not traverse the general Fourth Amendment proscription against unreasonableness."  Hummel-Jones v. Strope, 25 F.3d 647, 650 (8th Cir. 1994).

In this case, the search warrant authorized officers to search the entirety of Weinbender's home for the specified items.  Moreover, the officers had been informed that "hiding places," including under the basement stairs, were utilized by Weinbender.

The space along the I-beam was sufficiently large to permit any of the listed items to be stored there.  Furthermore, the evidence does not support Weinbender's argument that Officer Schmit engaged in the unnecessary destruction of property.  Instead, as the district court noted,

> There's no evidence in the pictures of any forcible pulling out of nails or ripping the drywall down.  And to me it was pretty clear it was a cutout panel of drywall that came down pretty easily and behind it was a compartment that contained the items which are the subject of this prosecution.  And so it seems to me that under those circumstances, we're not talking about pulling nails out of the wall or taking ceilings down or walls down,. . . .

See Suppression hearing transcript, at 110.

In light of the information possessed by the searching officers, the relative ease with which the officer removed the drywall and the reasonable probability of finding the sought for items hidden behind the drywall, the actions of Officer Schmit were reasonable.

Weinbender also argues that the seizure of the homemade silencer was not justified under the plain view doctrine.  The plain view doctrine permits law enforcement officers to "seize evidence without a warrant when (1) 'the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed,' (2) the object's incriminating character is immediately apparent, and (3) the officer has 'a lawful right of access to the object itself.'" Hughes, 940 F.2d at 1126-27 (quoting Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110  L.Ed.2d 112 (1990)).

In this case, the law enforcement officers gained access to Weinbender's residence under a properly issued warrant. See United States v. Murphy, 69 F.3d 237, 242 (8th Cir.), cert. denied, ___ U.S. ___, 116 S.Ct. 1032, 134 L.Ed. 2d 109 (1996). As indicated supra, since the items listed in the warrant could have been concealed along the I-beam, the officers did not violate the Fourth Amendment by visually searching that location. In addition, to properly observe the items secreted along the I-beam and to ensure that no additional items were present there, each item had to be removed. Thus, Officer Schmit did not violate the Fourth Amendment in removing the items from their secret storage place along the I-beam.

When Officer Schmit pulled the first metal object from its resting spot along the I-beam, he believed that it was a pipe bomb. He later learned the object was part of a homemade silencer. "The 'immediately apparent' requirement means that officers must have 'probable cause to associate the property with criminal activity.'" United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1026, 134 L.Ed.2d 105 (1996), (quoting United States v. Garner, 907 F.2d 60, 62 (8th Cir.), cert. denied 498 U.S. 1068, 111 S.Ct. 787, 112 L.Ed.2d 849 (1991)). "Probable cause demands not that an officer be 'sure' or 'certain' but only that the facts available to a reasonably cautious man would warrant a belief 'that certain items may be contraband or stolen property or useful as evidence of a crime.'" Id., (quoting Garner, 907 F.2d at 62, in turn quoting Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)).

Here, the incriminating character of the object was immediately apparent to Officer Schmit. The possession of either a pipe bomb or a homemade silencer is illegal. The fact that the item turned out to be the silencer, instead of a pipe bomb, did not

vitiate the probable cause.  <u>See</u> <u>Murphy</u>, 69 F.3d at 242 ("Regardless of whether the chemicals were used for manufacturing drugs or explosives, their incriminating nature as contraband was immediately apparent to officers entering the house.").  Thus, the seizure of the homemade silencer was justified under the plain view doctrine.

In conclusion, the district court did not err in denying Weinbender's motion to suppress.  Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-7-